UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| REGIONAL TRANSPORTATION COMMISSION OF WASHOE COUNTY,<br><br>Plaintiff,<br><br>v.<br><br>TEAMSTERS LOCAL 533, and DOES I-X, inclusive,<br><br>Defendant. | Case No. 3:14-cv-00674-MMD-WGC<br><br>ORDER |

**I. SUMMARY**

Plaintiff Regional Transportation Commission of Washoe County ("RTC" or "Plaintiff") seeks declaratory relief regarding its plan to activate the audio portion of a recording system already installed on its buses, which are operated by members of Defendant Teamsters Local 533 ("the Union" or "Defendant"). Before the Court is RTC's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 26) and the Union's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 28).[1] The Court has reviewed RTC's response and reply (ECF Nos. 31, 33) and the Union's response and reply (ECF Nos. 32, 34) as well as all accompanying exhibits.

For the reasons discussed below, Plaintiff's Motion is granted and Defendant's Motion is denied.

---
[1]The Court addresses both motions in the Discussion section because Plaintiff and Defendant raise the same arguments, with the exception that Defendant raises an additional argument regarding the National Labor Relations Act, *see* discussion *infra* Sect. IV(D).

## II.   BACKGROUND

RTC initiated this action on December 1, 2014, in the Second Judicial District Court for Washoe County. (ECF No. 26 at 1; ECF No. 28 at 6.) The case was removed on December 22, 2014. (ECF No. 1.) In their Complaint, RTC asks that this Court enter a declaratory judgment finding that activation of the audio component of Mobile View does not violate NRS § 200.640 or § 200.650 or the Union Contract. (ECF No. 1-2 at 5-6.) The facts in this case are not at issue.

RTC has the exclusive right to operate a system of public transportation in Washoe County. (ECF No. 1-2 at 2; ECF No. 26 at 2.) RTC contracted with MV Transportation, Inc. ("MV") to operate RTC's assets, including public buses. (ECF No. 1-2 at 2; ECF No. 26 at 2; ECF No. 28 at 9.) The Union represents the drivers of RTC buses. (ECF No. 26 at 2; ECF No. 28 at 6.)  MV and the Union entered into a collective bargaining agreement ("CBA" or "Agreement"), which governs drivers and other employees who operate RTC's buses. (ECF No. 26 at 2; ECF No. 28 at 9.) Each RTC bus is equipped with two audio-video recording systems: DriveCam[2] and Mobile View. (ECF No. 26 at 2; ECF No. 28 at 10.) At the front of each bus is a notice posted in both English and Spanish informing individuals that "this vehicle may be equipped with audio and video surveillance." (ECF No. 26 at 2.)

At issue here is activation and use of the audio component of Mobile View. Mobile View is a system of 6 to 12 cameras placed on each RTC bus. (ECF No. 26 at 3.) It continuously records video, which is stored for up to 7 days after which the video is recorded over. (ECF No. 26 at 3.) A recording can be retrieved at any time prior to being recorded over. (ECF No. 26 at 3.) The Mobile View system also has a camera that has a microphone, which is placed at the front of the bus near the fare box. (ECF No. 26 at 3.)

---

[2]DriveCam is a bidirectional camera mounted to the windshield of the bus, directed into the interior and exterior of the bus, and includes a microphone that is capable of picking up conversations near the driver. (ECF No. 26 at 2.) DriveCam can save the 10 seconds prior to an activating event and the 10 seconds after an activating event. (ECF No. 26 at 2.) DriveCam records both audio and video, and it records events at the front of the bus as well as events outside of the bus. (ECF No. 26 at 2-3.)

This microphone is capable of recording audio of conversations around the driver as well as noises that can be heard by the bus driver. (ECF No. 26 at 3.) The microphone is currently not enabled on RTC buses.

On March 21, 2014, MV provided notice to its bus drivers that the audio component of Mobile View would be activated. (ECF No. 26 at 4.) The notice stated that activation of the microphone of Mobile View would be effective as of April 21, 2014. (ECF No. 26 at 4.) On April 1, the President of the Union, Gary Watson, notified MV that the Union objected to activation of the microphone and audio recording. (ECF No. 26 at 4; ECF No. 28 at 11.) As a result of the Union's objection and threat of criminal penalties, RTC decided to defer implementation of the audio recording and to seek declaratory judgment in this action. (ECF No. 26 at 4.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and

///

draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992) (additional citations omitted)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**IV.    DISCUSSION**

Plaintiff's Motion argues that activating the audio component of the recording system does not violate NRS §§ 200.640 or 200.650 and that it is not a mandatory subject

of collective bargaining pursuant to the CBA. By contrast, Defendant's Motion argues the exact opposite on each point raised by Plaintiff and raises the additional argument that activating the audio component is a mandatory subject of bargaining under the National Labor Relations Act ("NLRA"). The Court agrees with Plaintiff that neither NRS provision applies in this context and that activating the audio component is not a mandatory subject under the CBA or the NLRA.

### A. NRS § 200.640

Plaintiff argues that recording audio on RTC buses does not violate NRS § 200.640 because the statute is narrowed in scope and the plain language of the statute shows that it does not apply in this context. (ECF No. 26 at 7-8; ECF No. 33 at 2.) The Court agrees.

NRS § 200.640 states:

> Except as otherwise provided in NRS 179.410 to 179.515, inclusive, and 200.620, a person shall not make any connection, either physically or by induction, with the wire or radio communication facilities of any person engaged in the business of providing service and facilities for communication unless the connection is authorized by the person providing the service and facilities.

The plain language of the statue prohibits individuals from making a connection with—essentially tapping into—the wire or radio communication facilities of a communications business without the consent of the business. *See State v. Allen*, 69 P.3d 232, 235 (Nev. 2003) ("When a statute is plain and unambiguous, [the] court will give that language its ordinary meaning and not go beyond it."). By contrast, the recording device here appears to be an internal recording device used by RTC that does not make a connection with the wire or radio communication[3] facilities of a business that provides services and facilities for communication.

///

---

[3] A "wire communication" is defined under Nevada law as the "transmission of writing, signs, signals, pictures and sounds of all kinds by wire, cable, or other similar connection between the points of origin and reception of such transmission, including all facilities and services incidental to such transmission, which facilities and services include, among other things, the receipt, forwarding and delivering of communications." NRS § 200.610(2).

In Defendant's Motion,[4] they point out that NRS § 200.640 appears under the subchapter heading "Interception and Disclosure of Wire and Radio Communications or Private Conversations" (ECF No. 28 at 13). Defendant's Motion also highlights that the memorandum of notice provided to employees evidences an intent to listen to conversations involving bus customers, that customers do not consent to having their conversations recorded, that the signs on the buses indicating that customers' conversations may be recorded is insufficient to garner customers' consent, and that bus drivers' did not consent to having their conversations recorded. (*Id.* at 13-16.) However, these facts are irrelevant to interpreting whether the activation of the audio portion of the device violates NRS § 200.640

Therefore, the Court finds that activating the audio portion of the recording device does not violate NRS § 200.640.

**B.  NRS § 200.650**

Plaintiff argues that recording audio on RTC buses does not violate NRS § 200.650 because the statute prevents surreptitious or clandestine recording of conversations and there is no reasonable expectation of privacy while on RTC buses given that there are notices at the front of the bus in English and Spanish stating that the vehicle "may be equipped with audio and video surveillance." (ECF No. 26 at 8-10; ECF No. 31 at 4-8.) Defendant contends that activating the audio portion of Mobile View violates NRS § 200.650 because individuals do, in fact, have a reasonable expectation of privacy on RTC buses, which is evidenced by the fact that passengers may not speak the languages that the notices are provided in, that the notices do not clearly inform people their conversations are actually being recorded, and that some people whisper to one another on a bus. (ECF No. 28 at 16; ECF No. 32 at 6.) The Court agrees with Plaintiff.

///
///

---

[4]Defendant makes no reference to NRS § 200.640 in their response to Plaintiff's Motion and instead focuses its response on interpreting NRS § 200.650. (ECF No. 32 at 3-9.)

NRS § 200.650 states that:

> [A] person shall not intrude upon the privacy of other persons by surreptitiously listening to, monitoring or recording, or attempting to listen to, monitor or record, by means of any mechanical, electronic or other listening device, any private conversation engaged in by the other persons, or disclose the existence, content, substance, purport, effect or meaning of any conversation so listened to, monitored or recorded, unless authorized to do so by one of the persons engaging in the conversation.

Based on the plain language of the statute, however, activating the audio portion of the Mobile View on RTC buses does not violate § 200.650 as the recording would not be surreptitious or violate the expectations of privacy of those on the bus.

In its Motion, Plaintiff points to a Nevada Attorney General opinion, in which the Office of the Attorney General held that monitoring the private conversations of prisoners was not surreptitious as inmates did not have a reasonable expectation of privacy "where notice of monitoring is clearly posted, or the monitoring equipment is in plain view." (ECF No. 26 at (citing to AGO 86-17, at *47 (Sept. 24, 1986)).) Similar to the monitoring of prisoners, the notices on RTC buses, which are at the front of the bus and in plain view, demonstrate that the use of the audio portion of Mobile View is not surreptitious.[5] *See, e.g.*, *Surreptitious*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("unauthorized and clandestine," "done by stealth and without legitimate authority"). Moreover, there is no reasonable expectation of privacy regarding conversations knowingly made in public. *Johnson v. Hawe*, 388 F.3d 676, 683 (9th Cir. 2004). Contrary to Defendant's contention, this lack of privacy is evidenced by individuals whispering on RTC buses in order to conceal the content of their conversations; whispering would not be required in a private space, like one's home, where there are reasonable expectations of privacy. Moreover, Defendant's argument that RTC is attempting to force bus drivers to consent to having their conversations recorded is irrelevant to whether activating the audio portion of Mobile View violates § 200.650, as conversations on RTC buses are not private.

---

[5] It is irrelevant that some individuals may not be able to read English or Spanish or that they may be illiterate. (*See* ECF No. 32 at 5,6.) Placing the notices at the front of the bus demonstrates that RTC does not intend the recording to be made surreptitiously or clandestinely.

Thus, as a matter of law, activating the audio portion of Mobile View does not violate NRS § 200.650.

### C. Collective Bargaining Agreement[6]

The CBA is an agreement between MV and the Union. (ECF No. 26 at 2; ECF No. 28 at 8; ECF No. 26-3 at 6.) Plaintiff contends that the use of recording devices and recorded data for discipline was settled in the CBA, and that the Agreement allows Defendant to view the recording prior to institution of any disciplinary action by MV. (ECF No. 26 at 11-12.) The Court agrees.

The CBA specifically states that MV "may employ new technology, including video systems . . . in order to help ensure the safety of the driver and passengers, and compliance with all federal, state and local driving rules and regulations by both the driver and the motoring or pedestrian public." (ECF No. 26-3 at 9.) While it is not clear that activating the audio component of Mobile View constitutes a "new technology" under the CBA, it is clear that Mobile View's video component was already in use and the audio component of the DriveCam system has already been in use without any noted problems from the Union. Thus, the Union was already on notice that these systems were in use and of the possibility that certain recordings could be saved and then used in disciplinary actions against bus drivers.[7] In addition, activating the audio component of Mobile View does not entail that all conversations of drivers or customers are recorded and saved for future use in disciplinary actions; rather, if the audio is not saved then it is recorded over

///

///

---

[6]As a preliminary matter, the CBA between MV and Teamsters expired on June 30, 2017. (*See* ECF No. 26 at 2; *see also* ECF No. 26-3 at 6.) Because the Court is uncertain if it was renewed, the Court will still address arguments relating to the Agreement.

[7]The CBA provides that MV may "reprimand, suspend, discharge, or otherwise discipline employees for just cause," as well as to "set the standards of productivity, the services to be rendered, to maintain the efficiency of operations," and the right to "introduce new or improved technology, machines, tolls, equipment, property, research, service, maintenance methods, and materials used to increase efficiency." (ECF No. 26-3 at 8-9.)

1 and cannot be used for purposes of safety or discipline.[8] (ECF No. 26-4 at 8 ("tapes are
2 recorded over after a 72 hour [sic] period unless there is an incident which requires that
3 it be saved").)[9] If a conversation is recorded, then the CBA provides that the Union be
4 given an opportunity to review and in certain circumstances receive a copy of the
5 recording if a disciplinary action is instituted against a driver. (ECF No. 26-3 at 9.)

Therefore, the Court agrees with Plaintiff that activating a component of an already existing recording system does not violate the CBA.

### D. National Labor Relations Act

In the alternative, Defendant argues that activating the audio component of Mobile View is a mandatory subject of bargaining under the NLRA because it relates to the safety and discipline of employees. (ECF No. 28 at 20-22.) Specifically, Defendant argues that this action is an attempt by Plaintiff to interfere with the rights of the Union and its members in violation of Section 7 of the NLRA. In response, Plaintiff states that "1) the issue of permissible recording have already been collectively bargained, and 2) Defendant's position that the proposed activation of the audio recording on Mobile View is a disciplinary action is a red herring." (ECF No. 31 at 10.) The Court agrees with Plaintiff that activation of the audio component does not violate the CBA, as discussed *supra* Section IV(C), and that activation does not necessarily implicate use in employee disciplinary actions because an audio recording from the Mobile View system would have to be saved and not recorded over in order to be used in such actions. (*See* ECF No. 31 at 11-12.) Moreover, even if a recording from the Mobile View system is saved, the CBA

///

///

---

[8] It is unclear to the Court whether RTC or MV are actually monitoring these recordings in real time or whether the recordings have to be saved before they can be observed. (*See, e.g.*, ECF No. 31 at 2 ("videos can be retrieved at any time prior to being recorded over").)

[9] Based on RTC's Board meeting minutes from February 21, 2014, an audio recording would need to be tagged and thus saved for future use in disciplinary proceedings, which occurs only if a complaint is made within the 72-hour period before the audio is recorded over. (*See* ECF No. 26-4 at 8-9; ECF No. 28 at 60-61.)

clearly provides an existing mechanism by which the recording may be used in any disciplinary actions.[10]

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the pending motions.

It is therefore ordered that Plaintiff's Motion for Summary Judgment (ECF No. 26) is granted and Defendant's Motion for Summary Judgment (ECF No. 28) is denied.

The Clerk is directed to enter judgment in favor of Plaintiff and close this case.

DATED THIS 18th day of September 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[10]While safety rules and rules of employee conduct are mandatory subjects of bargaining, activation of the audio component and use of audio recordings in disciplinary actions are still subject to the existing safety rules and rules of employee conduct of the CBA. (*See* ECF No. 28 at 21.)